Next case in our calendar is Vahanyan v. Garland. May I please the Court, Artem Emserian for Ms. Vahanyan and her son, Mr. Vahanyan. 8 U.S.C. 1158 D.6 is often called a death sentence in immigration. And death sentence is not given without procedural safeguards. Most of the cases have specifically two procedural safeguards. Number one is application preparer certifies that the application and the frivolous warnings are translated to the applicant. And number two, very important safeguard, there are always a record of applicant's oath during asylum interview that also contains frivolous warnings. Most of the cases cited, like Chima v. Holder or Kulakchian v. Holder, have those two documents to demonstrate notice. In the Kulakchian, which is very close case on point because in Kulakchian, petitioner also argued that frivolous warnings were not translated. There was a third document, specifically asylum officer's notes, that demonstrated that everything was translated properly to the petitioner. And therefore, court affirmed frivolous bar. Well, in this case, application preparer never signed certification under penalties that frivolous warnings were translated. Similarly... Does that matter? Yes, it does. Because it seems to me that your client or clients knew very well that the second application was fraudulent. The fact that it's fraudulent is not an issue. It's 100% fraudulent. We know that. Well, fraudulent is a slightly nastier word for frivolous. Well, but she has to be given a notice. Without a notice, bar doesn't apply. So your proposition is that if she's not given a notice that she shouldn't file a frivolous petition, we're supposed to credit her fraudulent petition? It's not my proposition, Your Honor. It is the law that says the government carries the burden to show that a notice was given. Counsel, what do we do with her sworn testimony that she basically did it on the urging or orders of her husband? That is true. Doesn't that show knowledge? I'm not arguing she did not know. Let me finish the question. Doesn't that establish knowledge on the part of the petitioner that she knew she had filed a fraudulent application? She did not dispute the fact that the application was fraudulent, or she knew or did not. But that's not the question we're raising. We're raising the question that the government couldn't carry the burden of the notice. But it's harmless error. What if she admits that she knew it was fraudulent when she filed it and she did it because she was told to do so by her husband? Because the bar is so severe and it's literally a death sentence, government carries the burden that notice was provided. Counsel, she's still living the lie. She's been using this false name to obtain Social Security and other benefits for years. I'm not justifying the lie. What I'm arguing is the notice must be present. It's a procedural safeguard that was established. But we have to find prejudice, do we not? And I'm wrestling with your inability to show prejudice here. Well, prejudice is very simple, Your Honor. Let me explain. If the frivolous bar doesn't apply, she was eligible to adjust status before the court under Section 245A of Immigration Nationality Act, specifically with a fraud waiver. However, the counsel… Do you think the agency in its discretion on this record would have granted relief? Discretion was discussed in light of refugee adjustment. And I agree 100% to adjust her under the fake name would make no sense whatsoever. Well, the problem is that we have two different stories, one from the first application, one from the second application. And I don't know which one to believe because she changes nationalities. She changes the whole story the second time around. So, which is true? I think it was admitted by my client and also was found by the court correctly that the second application was frivolous. The issue is whether the bar applies. And bar cannot apply if notice is not there. Most of the cases had two or three documents to prove it. This case had none. Isn't the purpose of the notice to meet due process? The purpose of the notice to warn the applicant that if you do this, you will be sentenced to death. Well, it wasn't given to her. Death meaning the immigration debt. No, your argument is a due process violation. In order for us to find a due process violation, we have to find that there was a violation and that it caused prejudice. My first argument was there was no notice. Government couldn't carry the burden because the applicant prepared and never certified. But in light of the record evidence and her admission, she knew. So, it doesn't matter whether they jumped through this particular hoop. Due process wanted to make sure that before she signed the application, she understood that there would be terrible consequences if she lied to the agency to obtain immigration benefits. And she admits now that she knew that. Denial of the application is not as terrible as death in immigration life. So, obviously, if she's lying… I just don't find this to be all that sympathetic a case. I agree. That's a different issue. But the issue for us to decide here whether procedural safeguards were there and they were not. I'm not arguing she didn't know that it was fraudulent. One thing… But that's the purpose of the procedural safeguard, is it not? The purpose of procedural safeguard is to punish somebody with immigration death sentence when they are warned. She wasn't. But she knew. She knew that she's lying. She had notice. And everybody who is lying knows that he or she is lying. I mean, you and I are just going round and round. I'm not sure… You see, having a fraud, still there is a possibility of a waiver. Having a frivolous part, there is no possibility of any waiver. And your argument really carries with it the premise that if she had been told of this consequence, she would not have lied. And that's what she testified. She would have not filed that application. See? She should be given a notice that you do this, you are dead. She is given a notice, you do this, we will not grant it. And everybody who makes fraudulent statement understands that if they're caught making the statement, they're not going to be granting the relief. But not everybody knows if you're making the fraudulent statement, you get a death sentence. Please quit talking about death sentence. Okay. Sorry. The consequence is not death. The consequence is that she is not entitled to relief in this situation. Well, in immigration, life is over. Well, yes. That's why I called it a death sentence in immigration. But you're asking us to believe that as soon as she got that warning, she would have told the truth. We don't know that. But a lot of people would have not proceeded. Didn't she testify before the asylum officer that for her 1999 application, a translator read the application to her? We don't have that testimony in the record, number one. And asylum officer's notes were never submitted. That's another procedure. Didn't the IJ find that? No, the IJ did not say that. Actually, board is the one who found that fact and engaged in the impermissible fact finding. IJ specifically said, you have a notice on two occasions. 1995 application has notice of frivolous warning, which it doesn't, because in 1995 there was no section 1158-6 in law. And then he said 1998 application also has warning that was translated to you, which it wasn't. Board came up with a third option and said, oh, by the way, she signed in front of the officer that everything was translated to her, and therefore the notice was there. Well, by that rationale, we don't need the section of interpreter signing under penalties that application was translated to her. We just can have a signature of the asylum officer to confirm that. But the application specifically requires the section F specifically says, application prepared, certifies that everything was properly translated. Board just came up with a third reason, even though affirmed under matter of Burbano, they came up with a third reason, wasn't discussed by the IJ. IJ specifically cited to Chima and said she had twice been placed on notice. Well, Chima, by the way, and that's another important question here, Chima was never standing for a proposition that untranslated frivolous warnings constitute sufficient notice. Chima always argued that he was fluent in English. He read English. He could write English, and he was coming from a former British colony. Obviously, he spoke English fluently. So he rather challenged the adequacy of the warnings of the notice. So Chima court said warnings are adequate. Kulakchin, on the other hand, argued she wasn't translated. But there, there were three documents specifically in the record. It's the certification of the interpreter, certification of the interpreter at the time of the asylum interview, and also asylum officer's notes. None of this exists in this case. All of these three procedural safeguards just simply don't exist. The only question is if the bar applies or not, and that question is only answered no if the government cannot carry the burden. It's government burden to show the notice was given, and they cannot carry that burden. That's why board came up with alternative findings going into the fact findings and said, oh, by the way, yeah, that's fine, whatever the judge did, but here is signature during the asylum interview, and she testified. There is no record of her testifying. There is no asylum officer's note. But doesn't she swear to tell the truth when she's interviewed by the asylum officer? She supposedly sworn to tell the truth. We really don't know because there are no asylum officer's notes. On the prejudice, if I may address the prejudice specifically. Now, if the bar doesn't apply, the board argues the adjustment would have been denied in exercise of discretion. However, board misses the point. The judge analyzed refugee adjustment, not adjustment in a sense from the perspective of her citizen daughter, and obviously it came up as ineffective assistance of previous counsel that she also has a qualifying relative of 92-year-old mother who is American citizen. So board says, well, judge said discretionary rule denied, but judge said discretionary rule denied the refugee adjustment, and it perfectly makes sense that why would you grant a refugee adjustment to the person who obtained refugee status by fraud? That makes no sense to do. It's against public policy. Judge did not analyze the fact from a perspective of straightforward adjustment where the visa is available to United States citizen daughter because judge kept asking the counsel, does she have a qualifying relative? Does she have a qualifying relative? It's not three different occasions, different hearings. He kept saying, no, she doesn't. No, she doesn't. She doesn't. And then he admits to me that, you know what? I did not know. I did not react. I forgot and all that stuff. You know, we don't know how judge would have ruled on adjustment to the citizen daughter. I thought he also said that he deferred on that portion of the case because he wanted a ruling on the fraud notice. Well, we have to remember that even though he wrote the letter to me, he's actually talking to the state bar to reduce his culpability. He's just trying to explain his way out of it. So we should believe what he says if it helps her. He admitted that he made a mistake. He admitted he made a mistake. It's without a doubt. The record is clear. He kept telling the judge there's no qualifying relative. If I may reserve a portion of my time for a rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Jeffrey Hartman for the Attorney General. Congress, when it enacted the frivolous asylum bar, intended to deter and punish the type of fraudulent conduct that occurred in this case. Ms. Fayanian applied for asylum in 1995, alleging that she was persecuted on account of her Armenian ethnicity. And when that claim failed and the frivolous asylum bar came into effect, she applied for asylum again. Her application contained the clear, concise warning that this court articulated in CHEMA provides adequate notice that filing a frivolous application will forever bar the noncitizen from obtaining immigration benefits. But she applied anyway. She used a fabricated identity for herself and her family. And her asylum claim in 1998 was the exact opposite of the claim that she put forward in 1995, rather than seeking refuge because she was persecuted on account of her Armenian ethnicity, she claimed that she was persecuted by Armenians. The agency properly concluded that she had noticed that if she filed that application, she would be forever barred from receiving immigration benefits. And, of course, at AR-686 where the 1998 application is, this application contains the same bold, clear, and concise warning that the court considered in CHEMA and ruled was legally sufficient to put a noncitizen on notice of these consequences. In addition— What do we do with the argument that she was under duress? Let me state it to you in the strongest possible form that perhaps aren't here. But let's say that she applied for asylum the second time around with all kinds of false statements, but she did so under threat of death, that is to say severe coercion. Does that excuse in any fashion what she did? I'm not sure the coercion rose to that level, so I'm asking it to you in a very firm and as clean a way as I can. I don't think that it does, Your Honor. I mean, that's not a claim that she raised before the asylum officer when she appeared. The duress claim, I think, is really one that counsel has advanced. But before the immigration judge—I mean, at AR-48 to 490, where she's talking about the circumstances of signing the application, she says that her husband was in the room, but at no point during her testimony where she's recounting the circumstance under which she signed the application does she allege that she was under any threat of imminent bodily injury. So in your view, the question simply wasn't presented. Yeah, I don't think this record supports a finding of duress, and it might be a different circumstance where she testified, I didn't have notice I was under duress, and they forced me to sign this. I didn't have a chance to read it. But that's not her testimony. She testified that in 1998 she had been taking English classes since 495. This application was submitted in November. Another circumstantial fact that goes to her knowledge of the notice is the fact that it's not in the 1995 application. So there's a material difference between that application and the bold font warning that she signs in her signature that AR-686 extends into the box that contains the warning. And when she goes before the asylum officer under oath, she makes ten corrections, and two are particularly significant here. She says, in contrast to what she testified before the immigration judge, their husband did not assist her in the preparation of the application. And then she goes on to explain that the application had been read to her in her native language and that she understood it. And then after making that correction before the asylum officer, where a Russian interpreter was present, which she testified was her best language, she certified under oath that she knew all ten corrections, that they were all true. And so together, those factors established that Ms. Fionnian had noticed that if she filed this 1998 application, that she would be forever barred. And moreover, her signature on the application is her false identity. So, you know, before the immigration judge, I think there was some back and forth about the point in time where she knew, where trial counsel is asking leading questions. But the application makes clear because she assumed the false identity before signing the application. And so our view is that Ms. Fionnian hasn't met her burden on review to demonstrate, to identify record evidence that compels the conclusion that she did not receive this notice. And I take my friend's point that in Chima and Kwikwetjen, there were additional notices. But Chima holds that the bold warning at the top here at 686 provides adequate notice to the non-citizen. And the Sixth Circuit's recent case in Kaidikov rejects this argument that the frivolous asylum bar can't attach until a non-citizen appears before an asylum officer or an immigration judge. There the argument was, this isn't even a final application because I haven't appeared before one of those adjudicators. And the Sixth Circuit said, no, that isn't required to complete the application when you sign under the bold Chima notice. You've executed your asylum application because, of course, the applicant has control over when that happens. And that warning, as this Court has held in Chima, is sufficient. And so if the Court denies the petition with respect to the frivolous asylum bar, Ms. Fionnian's due process claims are unavailing, to the extent that they challenge the frivolous asylum bar. The authentication claim, I think, fails for a number of reasons. One, before the immigration judge, the document that they were all referring to was Exhibit 24, and she challenges Exhibit 6. But putting that aside, in conjunction with the motion to remand for ineffective assistance of counsel, there's an affidavit documenting that the application, the 1998 application, which is frivolous, was obtained from DHS through a FOIA request and attached to the motion. So she can't establish prejudice. She's basically self-authenticated the document that she's challenging. And moreover, Ms. Fionnian, in the hearing before the immigration judge in 2018, was shown the application. It was Exhibit 24 at that time, but the same, I guess, what my friend challenges is Exhibit 8 before the court, and she confirmed that her signature appeared on the document. And so she self-authenticated. She authenticated the document later through a FOIA request and affidavit from her own attorney. So she can't establish prejudice. And with respect to the motion to remand for adjustment, the Board denied that as a matter of discretion, which is consistent with the Supreme Court's decisions, like Obudu, INS v. Dougherty, which all established that before reaching a statutory eligibility question, the Board has discretion to deny a motion to reopen because they wouldn't exercise discretion if they reopened the case in any event. And I don't think there's any significant difference between the fact that before the immigration judge, she was seeking refugee adjustment under 1159 with a waiver under C and the application under 1255A through the I-130 petition filed by her daughter, because, of course, to seek the 1155 adjustment, she needs a fraud waiver, which requires an additional showing of extreme hardship to her mother. And she presented that evidence before the Board. It rejected it in denying her motion to remand and then again in denying her motion to reconsider. So I don't see any way she can prevail on that claim, even if the frivolous bar wasn't an issue. And with respect to the authentication issue that the DOJ seals, Your Honor, that's an issue the Court has seen before in Najjar in footnote 10. It's noted that there was a similar circumstance where DHS relied on a DOJ seal and also in Gregorian, which we cite in the due process part of our brief in footnote 2 there, where CIS continued to use INS letterhead even after the agency, the transfer of functions in the Homeland Security Act. But she can't establish any prejudice from that because of the self-authenticating issues we've discussed. And if the Court has any other questions, I'm happy to answer them. But our position is that Ms. Fejonian received notice of the consequence of fabricating the material elements of an asylum claim. Knowing those consequences, she filed that application anyway, and she has to live with those consequences. Thank you. Thank you. The document that I have submitted into the record from FOIA actually does not contain annotations by the asylum officer. Therefore, the document that is court relied and the board relied with annotations of the asylum officer cannot be admitted. This court would not have admitted a document from a Department of Defense with the seal of the Department of Education. Those are completely different departments, and Department of Justice cannot verify the Department of Homeland Security documents. It simply doesn't make sense. Department of Interior wouldn't verify and certify the Department of Homeland Security's documents. But for some unknown reason, the government argues that Department of Homeland Security documents could be certified by Department of Justice seal. It just makes no sense. Counsel, why aren't they admissible under the public records exception to the rules of evidence? The rules require in court to provide certified copies. Certified copy was flawed because two different departments, the Department of Justice was not a custodian of the record, yet somehow Department of Justice seal with the signature of Immigration and Customs Enforcement agent somehow certified the document. Well, let's see. Are we talking about a document that occurred at the time that INS was still part of the Department of Justice? Actually, it wasn't. Since 2001, it was gone, and the letter specifically says Department of Homeland Security. What was the document? Wasn't the document either a 95 or a 98 document? The document was submitted. I'll give you exactly the date it was submitted. Let me just look at the... It's Exhibit 6, and it was submitted in 2010. Nine years after... Okay, but when was the document created? Well, the document that was created is the asylum application, which was signed in 98. At the time when immigration was still part of the Department of Justice. Correct. But the certification was made in 2010, and certification... But why can't the Department of Justice certify a public record that was part of its record system in 1995? Department of Justice could not have certified that record because Department of Justice wasn't a custodian of the record in 2010 when they submitted it. They copied it in 2010 and said, this is from the Department of Justice record, which it was not. Okay. Was that issue raised before the BIA? It was raised before the BIA, absolutely. It wasn't raised during the trial, but it was raised during the BIA several times. Just quickly, credibility. Paramount question in any immigration proceedings are credibility of the respondent. Judge never made any credibility findings. Another issue, six years of transcripts simply gone. Six years, there were hearings for six years, no transcripts whatsoever. Board says, no prejudice because you cannot demonstrate what was missing. Obviously, the transcript is not there. I cannot demonstrate what was missing. However, judge states in his opinion that pleadings were taken previously during the previous judges. Well, there's no record of pleadings because six years of records are gone. And somehow, you know, I don't think the government can carry its burden. There is no notice. I'm not arguing my client is sympathetic or not. That's not an issue here. The only issue is whether the government carried its burden for the notice required for a frivolous bar. That's number one. And number two, she could have been filing adjustment of status application under 1155A through the citizen daughter with qualifying relatives, 92-year-old citizen mother, but because of the ineffective assistance, she was deprived of that. Thank you. Thank you. Case has been submitted.
judges: FLETCHER, TALLMAN, LEE